FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

'97 NOV 10 PM 3:40

U.S. DISTRICT COURT
N.D. OF ALABAMA

KIRKLAND RIDGEL,            }
                            }
     Plaintiff              }
                            }
     vs.                    }    CIVIL ACTION NO.
                            }
                            }    CV-96-AR-0893-S
TURNER RENTAL,              }
                            }
     Defendant              }

ENTERED
NOV 10 1997

**MEMORANDUM OPINION**

The only issue presently before the court, in the above captioned case, is whether Kirkland Ridgel's ("Ridgel") hostile environment race discrimination claim, asserted pursuant to 42 U.S.C. § 1981, is time barred by the statute of limitations. Defendant failed to argue that issue earlier and has moved for reconsideration. Defendant, Turner Rental ("Turner"), now argues that it is entitled to summary judgment because Turner's claim under § 1981 is time barred. The court agrees.

Because § 1981 does not contain a statute of limitations provision, this court must look to state law for guidance in the present case. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S. Ct. 2617, 2620 (1987). Alabama Code § 6-2-38(1) provides a two year statute of limitations for injury to the rights of another, not arising from contract. *See Lufkin v. McCallum*, 956

F.2d 1104, 1105 - 6, n.2  (11th Cir.), *cert. denied*, 506 U.S. 917, 113 S. Ct. 326 (1992). Therefore, this court must determine whether a jury could find that Ridgel suffered racial harassment between April 9, 1994 and the date he filed his complaint, April 9, 1996. Ridgel rather lamely asserts the "continuing violation" theory as an excuse for failing to file within the two-year limitations period.

### I.  April 9, 1994 - April 9, 1996
#### A. Facts [1]

Ridgel, who is black, worked as a mechanic for Turner at its Centerpoint location from 1992 until 1995. During his tenure there, Ridgel and another black employee were accused by Dave Knight ("Knight"), the store manager, of stealing a piece of equipment. There were no other black employees at that location, and Knight did not similarly accuse any of the white employees. Later, after a friend of Knight's returned the piece of equipment, Turner complained about the situation to his General Manager, who failed to respond.

After Ridgel complained about Knight's allegedly discriminatory treatment, Knight required that Ridgel work on

---

[1] These facts are reported in the light most favorable to Ridgel.

Saturdays, thereby negating an agreement the two had made that Ridgel would have Saturdays off. Because Saturday is Turner's busiest day, explained Knight, he would need Ridgel, the sole mechanic, on duty. The manger of each store establishes employee work schedules and there is evidence that a white mechanic at another Turner location was allowed Saturday's off.

After more complaints about how he was treated by Knight, Ridgel requested a transfer to Turner's Lorna Road location, where he had worked prior to his employment at the Centerpoint store. When Knight became aware of Ridgel's request, he called Ridgel a "pussy." Ridgel complains that he was verbally abused and called names by Knight. While Ridgel admits that Knight verbally abused all employees, Ridgel complains that he was subjected to more abuse than the white employees.

Ridgel transferred to the Lorna Road location in 1995, even though the move involved a demotion and pay cut. From the time he left the Centerpoint location until he resigned, in 1997, Ridgel did not receive annual pay raises, as did similarly situated white employees.

B. **Analysis**

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F.R.Civ.P. 56(c). The Eleventh Circuit stated the obvious when it observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a mater of law." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

Hostile environment or racial harassment occurs when the conduct in question "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Fleming v. Boeing Co.*, 120 F.3d 242, 245 (11th Cir. 1997) (internal quotes and citations omitted). While discrimination, in and of itself, is offensive, more than intent to discriminate is required to create a hostile environment claim. Such a claim arises when the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently <u>severe</u> or <u>pervasive</u> to

alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotes omitted)(emphasis supplied)(citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 - 71 (1993)). Where there are no racial slurs, a plaintiff may maintain a hostile environment claim if those outside his protected group are treated so favorably. *Dudley v. Wal-Mart Stores, Inc.*, 931 F. Supp. 773, 807 (M.D. Ala. 1996); *Perryman v. West*, 949 F. Supp. 815, 822 (M.D. Ala. 1996), that the work place becomes objectively infused with severe or pervasive abuse or hostility. *Harris*, 510 U.S. at 21, 114 S. Ct. at 370 - 371.

When analyzing a hostile environment claim, the court should consider "all the circumstances," including the frequency and severity of the discriminatory conduct, whether the conduct was physically threatening or humiliating and whether the conduct unreasonably interfered with the employee's work performance. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995)(citing *Harris*, 510 U.S. at 23, 114 S. Ct. at 371). No single factor is determinative, however. *Id.*

Because Ridgel does not pinpoint precisely when the incidents in question occurred, the court cannot ascertain which incidents occurred prior to the two-year limitations period and

which, if any, thereafter.  Logic suggests, however, that three events occurred close to Ridgel's transfer to Lorna Road, in 1995, and therefore occurred during the limitations period: (1) Knight's requirement that Ridgel work on Saturdays, (2) Knight's utterance of a vulgar word, and (3) Turner's failure to award Ridgel annual pay raises while at Lorna Road.  Of course the frequency of incidents is not determinative; the court must also examine the severity of the allegedly discriminatory conduct. *Vance v. Southern Bell Telephone & Telegraph Co.*, 983 F.2d 1573, 150 - 11 (11th Cir. 1993), *cert. denied*, 513 US. 1155, 115 S. Ct. 1110 (1995).

Taken together, the court is not prepared to hold that the incidents about which Ridgel complains establish a claim of hostile environment.  These incidents were not physically threatening and the severity of the incidents did no exceed what occurs in a pure disparate treatment case.  Moreover, the allegedly discriminatory conduct here was in no way as severe or pervasive as that which occurs in a typical hostile environment case.  *E.g., EEOC v. Beverage Canners,* Inc., 897 F.2d 1067 (11th Cir. 1990)(overt and commonplace racial slurs); Butler *v. Coral Volkswagen, Inc.*, 629 F. Supp. 1034 (S.D. Fla. 1986) (daily racial epithets); *Vance*, 983 F.2d 1573 (noose placed at plaintiff's work station on two occasions, plaintiff and other

6

black employees disciplined while white employees were not disciplined for similar conduct).

First, the Saturday work requirement, while inconvenient, shows nothing more than a breach of an oral agreement. Indeed Ridgel fails to even show disparate treatment here because there are no comparators. *See Dudley*, 931 F. Supp. at 807 (noting that, absent racial slurs, a plaintiff may use instances of disparate treatment to support a hostile environment claim). Ridgel's purported comparator is a mechanic at different Turner location. Yet, Ridgel admits that employee scheduling occurs at the discretion of each location manger. Therefore he cannot show disparate treatment, much less working conditions that were hostile or abusive. At most this incident suggests retaliation for Ridgel's complaints about the theft allegation. However, this situation certainly does not rise to the level of hostility or abuse required to maintain a hostile environment claim.

Second, the vulgar word used by Knight to describe Ridgel was not racially abusive or racially derogatory and there is no evidence that it was racially motivated. Indeed, Ridgel admits that Knight was verbally abusive to both black and white employees. While Ridgel claims he was the target of more verbal abuse than white employees, he does not prove facts that would

7

substantiate his hostile environment claim; he simply makes a broad assertion without describing particular incidents. Moreover, there is no evidence that any verbal abuse Ridgel may have encountered was racial in nature. *See EEOC*, 897 F.2d 1067 (upholding lower court finding of hostile environment where racial slurs were overt and commonplace); Butler, 629 F. Supp. 1034 (holding that hostile environment existed where plaintiff was subject to daily and continuous racial epithets from employees and management). Nor is there any evidence that the verbal abuse was threatening. *See Harris,* 510 U.S. at 21, 114 S. Ct. at 370 - 371.

Finally, although the pay raise disparity supports Ridgel's disparate treatment claim, it is not enough to support a hostile environment claim. While disparate treatment may be considered when analyzing a hostile environment claim, *Wal-Mart*, 931 F. Supp. at 807, the conduct must go beyond pure workplace disparity. Instead, Ridgel must show that the disparity created an atmosphere that was objectively abusive or hostile. *Edwards*, 49 F.3d at 1521 (citing *Harris*, 510 U.S. at 23, 114 S. Ct. at 370 - 71).[2] Ridgel has not made such a showing. Were disparate treatment enough, without severe or pervasive abuse or hostility,

---

[2] While *Edwards* notes that the a "hostile and abusive" work environment must exist. Edwards cites to *Harris*, which holds that the work environment must be "hostile or abusive." *See Harris*, 510 U.S. at 21, 114 S. Ct. at 370.

8

*Harris*, 510 U.S. at 21, 114 S. Ct. at 370, there would be no need to have separate causes of action for disparate treatment and hostile environment.

Knight's accusation, that Ridgel and another black employee stole equipment, is the only other incident that occurred while he worked at the Centerpoint location from 1992 until 1995. It is unclear from the record, however, whether this incident occurred during the limitations period. Had it occurred during the limitations period, it still would not help Ridgel's hostile environment claim. While the theft accusation may indicate disparate treatment, there is no objective evidence of abuse or hostility which rises to a level necessary to maintain a hostile environment claim. Knight did not take any negative employment action, file police charges or use racially derisive terms.

Examining the totality of circumstances, these incidents do not support Ridgel's allegation that his work atmosphere was "severely" or "pervasively" infected with racial harassment. Indeed, only two of the incidents are clearly of a racial nature (the theft accusation and the pay raise disparity). Without more, Ridgel's hostile environment claim can not survive.

## II. 1989 - 1992

### A. Facts

Before he worked at the Centerpoint location, Ridgel worked at Turner's Lorna Road location. While he was hired as a serviceman, he eventually assumed the duties of a mechanic without a change of title or an increase in pay. Ridgel was also accused of stealing during his first stint at Lorna Road. This time he was the only person accused of stealing and the only black employee. The most disturbing incident, which occurred during this time, involved a co-worker who explained that he was from Mississippi where they hung blacks. The co-worker then proceeded to place a noose over a beam in the service area of the shop. The noose remained on the beam for three to five days in plain view of the store manager.

### B. Analysis

The noose incident was clearly a racially hostile act. *See Vance*, 983 F.2d at 1511, n.4. It is undisputed, however, that this incident and the other 1989 through 1992 events occurred outside the statute of limitations period. Ridgel asks this court to consider all of the pre-limitations period incidents, along with his post-limitations period incidents, when analyzing his hostile environment claim. He argues that the court can do so under the "continuing violation" theory.

> Although "the precise contours and theoretical bases of the theory...are at best unclear," there is general agreement that [the continuing violation theory] relieves a plaintiff of the burden that all actionable conduct must have occurred within 180 days prior to the charge, so long as the complaint is timely as to the last occurrence.

*Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1570 (11th Cir. 1987) (citing *Berry v. Board of Supervisors of Louisiana State Univ.*, 783 F.2d 1270 (5th Cir.)), *cert. denied*, 479 U.S. 868, 107 S. Ct. 232 (1986)).  Isolated incidents of discrimination, however, are not enough to show a continuing violation.  *Berry*, 783 F.2d at 981.  Instead, the plaintiff must show some connection between the acts which occurred before and during the limitations period  *Id.*  When determining if the acts are connected, the court should look at a variety of factors, none of which are determinative.  *Id.*

> The first is subject matter.  Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation?  The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision?  The third factor, <u>perhaps of most importance</u>, is degree of permanence.  Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Id.*[3] (emphasis supplied).

In the present case, the allegedly discriminatory acts do not involve the same subject matter or type of discrimination. The noose incident involves harassment, while his other complaints involve disparate treatment (two accusations of stealing, disparity in pay raises, and failure to receive mechanics pay) or possibly retaliation (Saturday work requirement). *See Robinson v. Caulkins Indiantown Citrus Co.*, 701 F. Supp. 208, 211 (S.D. Fla. 1988) (refusing to find a commonality of subject matter where plaintiff complained of assault and harassment, then later complained of disparate wages and finally complained of refusal to hire). Therefore, Ridgel fails on the subject matter factor.

The most important factor, permanence, is most detrimental to Ridgel's argument. Under the permanence analysis, the court looks at the series of allegedly discriminatory acts and asks

---

[3] The Eleventh Circuit utilized these three continuing violation factors in *Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 799 - 801 (11th Cir. 1988). However, the *Roberts* decision was later amended in a manner which made the continuing violation discussion irrelevant. *See Roberts v. Gadsden Memorial Hosp.*, 850 F.2d 1549 (11th Cir. 1988). Therefore, the continuing violation discussion was withdrawn. *Id.* Since then, several District Courts within this circuit have applied these three continuing violation factors. *See e.g., Quillen v. American Tobacco* Co., 874 F. Supp. 1285, 1292 (M.D. Ala. 1995); *Cabiness v. YKK (USA), Inc.*, 859 F. Supp. 582, 586 (M.D. Ga. 1994); *Haynes v. Shoney's Inc.*, No. 89-30093-RV, 1992 WL 752127, at * 17 (N.D. Fla. June 22, 1992); *Robinson v. Caulkins Indiantown Citrus Co.*, 701 F. Supp. 208, 211 (S.D. Fla. 1988).

what event would have indicated to a reasonable lay person that his rights were being violated. *Berry*, 715 F.2d at 981; *Robinson*, 701 F. Supp. at 211. See *Dumas v. Town of Mount Vernon, Alabama*, 612 F.2d 974, 978 (5th Cir. 1980).[4] If that act occurred outside the limitations period, then the plaintiff's continuing violation argument fails. Often the defendant's actions "take place over a[n extended] period of time, making it difficult to pinpoint the exact day the violation occurred or the defendant covertly follows an allegedly unconstitutional practice evidenced only by a series of discrete acts." *A.M.R. Enterprises v. City of Phoenix*, No. CIV-94-2007-PHX-ROS (BGS), 1997 WL 150104, at * 5 (D. Ariz. March 25, 1997). "The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights, or when he should have perceived that discrimination was occurring." *Dumas*, 612 F.2d at 978.

Surely Ridgel would not dispute that the noose incident, which occurred in 1991 or 1992, would have indicated to a reasonable person he was experiencing discrimination. Because this incident had a degree of permanence that should have alerted Ridgel to protect his rights, but he failed to do so in a timely

---

[4] The Eleventh Circuit has adopted as precedent all Fifth Circuit Court of Appeals cases decided prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

13

manner, he can not meet the permanence factor. Having failed to meet two of the enumerated factors, including permanence the most important factor, this court does not reach the issue of whether Ridgel meets the frequency factor.

Accordingly, Ridgel's continuing violation argument fails. "Th[e] theory of continuing violation has to be guardedly employed because within it are the seeds of the destruction of statutes of limitation in [discrimination] cases." *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 533 (5th Cir. 1986), *cited in Haynes v. Shoney's Inc.*, No. 89-30093-RV, 1992 WL 752127, at * 17 (N.D. Fla. June 22, 1992).

### III. Conclusion

Ridgel's § 1981 hostile environment claim cannot survive summary judgment. The one act that would have helped plaintiff's hostile environment claim occurred outside the limitations period. Because the court cannot consider this incident or any incidents occurring before 1994, Ridgel does not meet the requirements for a continuing violation theory analysis. Consequently, summary judgment for Turner, on this claim, is appropriate.

An appropriate, separate order will be entered.

DONE this 10th day of November, 1997.

/s/ William M. Acker
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

15